# EDDIE ORELLANA *v.* COMMISSIONER OF CORRECTION
## (AC 33295)

DiPentima, C. J., and Beach and Sheldon, Js.

Argued January 10—officially released April 24, 2012

*Heather Golias*, special public defender, for the appellant (petitioner).

*Toni M. Smith-Rosario*, senior assistant state's attorney, with whom, on the brief, were *Scott J. Murphy*, former state's attorney, and *Brenda Hans*, assistant state's attorney, for the appellee (respondent).

*Opinion*

BEACH, J. The petitioner, Eddie[1] Orellana, appeals from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. The petitioner claims that the court erred by (1) rejecting his claim that his trial counsel rendered ineffective assistance, (2) rejecting his claim that his appellate counsel rendered ineffective assistance and (3) determining that his due process rights were not violated. We affirm the judgment of the habeas court.

The following factual and procedural history is relevant to our resolution of the petitioner's appeal. As this court set forth in *State* v. *Orellana*, 89 Conn. App. 71, 872 A.2d 506, cert. denied, 274 Conn. 910, 876 A.2d 1202 (2005), the jury reasonably could have found the following facts. "Prior to April 15, 2002, Jessica Jusino had assisted Christopher Chute, a detective in the narcotics enforcement bureau of the New Britain police department, as a confidential informant in narcotics

---

[1] The spelling of the petitioner's first name has varied from "Eddy" to "Eddie" throughout the proceedings in the underlying criminal case, direct appeal and habeas case.

arrests. At approximately noon on April 15, 2002, Jusino contacted Chute and offered to arrange to have heroin delivered to a specific location in New Britain. . . . By means of her cellular telephone, Jusino subsequently contacted the [petitioner] and arranged for him to deliver 350 packets of heroin to her. The [petitioner] had sold heroin to Jusino, in a similar manner, on prior occasions." Id., 73–74. The petitioner and another individual went to the agreed on location in a car containing 350 packets of heroin that had a street value of approximately $3500. Id., 74–75.

On April 15, 2002, the petitioner was arrested and charged with possession of narcotics with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b), conspiracy to sell narcotics in violation of General Statutes §§ 53a-48 and 21a-278 (b) and possession of a controlled substance with intent to sell within 1500 feet of a public housing project in violation of General Statutes § 21a-278a (b). He was found guilty on all three counts following a jury trial and was sentenced to a total effective sentence of thirteen years incarceration.

The petitioner appealed from the judgment of conviction and this court affirmed the judgment. See id., 73. Our Supreme Court denied certification to appeal. See *State* v. *Orellana*, 274 Conn. 910, 876 A.2d 1202 (2005). By way of an amended petition for a writ of habeas corpus, the petitioner alleged that he was denied the effective assistance of trial counsel because his trial counsel failed (1) to request an instruction limiting the jury's consideration of prior consistent statements made by Jusino, (2) to preserve that claim for review on appeal by not challenging the trial court's failure to give such a limiting instruction sua sponte and (3) to investigate Jusino. The petitioner also alleged that his appellate counsel rendered ineffective assistance by

failing to raise on appeal the claim that the trial court erred by failing to provide a limiting instruction and by failing to claim review of that unpreserved claim pursuant to *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), or the plain error doctrine. The petitioner further alleged that his due process rights were violated in that the prosecutor did not disclose to the petitioner's trial counsel that Jusino received a lenient sentence in exchange for her testimony in the petitioner's case.

On July 15, 2010, the habeas court conducted a trial and denied the petition for a writ of habeas corpus. The court concluded that the petitioner's claim that his trial counsel rendered ineffective assistance by failing to request a limiting instruction and by failing to preserve the issue for appeal did not succeed "primarily for lack of a showing of prejudice." It further concluded that the petitioner failed to demonstrate the benefit that any additional investigation of Jusino by his trial counsel would have provided. Additionally, the court rejected the petitioner's claim that his appellate counsel rendered ineffective assistance. It declined to second guess the tactical decisions of the petitioner's appellate counsel and concluded that *Golding* review and plain error review likely would not have been available. Finally, the court concluded that the petitioner failed to provide any credible evidence of the existence of an undisclosed agreement or understanding between Jusino and the state. Subsequently, the court granted the petitioner's petition for certification to appeal. Additional facts will be set forth as necessary.

I

The petitioner first claims that the court erred by rejecting his claim of ineffective assistance of trial counsel. He argues that his trial counsel rendered ineffective assistance by failing to request a limiting instruction regarding Jusino's prior consistent statements, to take

an exception to the trial court's failure to give such an instruction sua sponte and otherwise to preserve this issue for appeal. We disagree.

This court set forth the following relevant facts in our opinion in *State* v. *Orellana*, supra, 89 Conn. App. 71. Jusino testified on cross-examination, as she had on direct examination, that she purchased narcotics from the petitioner " 'three or four' " times just " 'two or three days' " prior to April 15, 2002. Id., 90. Jusino further testified that, although she had told Chute that she had purchased narcotics from the petitioner before, she did not mention those specific instances to Chute. Id., 90–91. On recross-examination of Jusino, the petitioner's trial counsel asked Jusino again whether she had told Chute that she purchased narcotics from the petitioner on those specific instances. Id., 91. "Jusino reiterated that she had not told Chute those details about the prior narcotics transactions. On redirect examination, the prosecutor asked Jusino whether on April 15, 2002, she had informed Chute that she had purchased drugs from the [petitioner] 'in the past, prior to April 15,' and Jusino replied affirmatively. . . . The [petitioner's trial counsel also] asked Jusino several questions concerning her motivation for cooperating with Chute and testifying at trial. . . .

"After Jusino left the witness stand, the prosecutor informed the court that he wanted to recall Chute to the witness stand. The prosecutor stated that he wanted to elicit testimony from Chute that on April 15, 2002, Jusino told Chute that she had purchased narcotics from the [petitioner] on prior occasions. The prosecutor reminded the court that earlier in the trial, it had precluded the state from eliciting such testimony as evidence of the [petitioner's] knowledge or intent. The prosecutor argued that he now wanted to elicit the testimony for a different purpose, as Jusino's prior consistent statement. Essentially, the prosecutor argued

that the [petitioner] had attempted to impeach Jusino by suggesting that on April 15, 2002, she did not disclose relevant information to Chute about her prior narcotics transactions with the [petitioner]. . . .

"The court permitted the state to recall Chute and to examine him in the manner requested. Chute testified that on April 15, 2002, Jusino told him that on prior days, the [petitioner] had sold and delivered heroin to her in the area of Park and Stanley Streets in New Britain." Id., 91–93. This court concluded that the trial court properly exercised its discretion by admitting Jusino's prior consistent statements and declined to reach the petitioner's unpreserved challenge to the lack of a limiting instruction regarding said statements. Id., 95–96.

We first set forth the relevant law. "A habeas petitioner can prevail on a constitutional claim of ineffective assistance of counsel [only if he can] establish both (1) deficient performance, and (2) actual prejudice. . . . For ineffectiveness claims resulting from guilty verdicts, we apply the two-pronged standard set forth in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) . . . .

"To satisfy the performance prong, the petitioner must show that counsel's representation fell below an objective standard of reasonableness. . . . The range of competence demanded is reasonably competent, or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . .

"To satisfy the prejudice prong for ineffective assistance claims resulting from guilty verdicts, the petitioner must demonstrate that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . A reasonable probability is one [that] is sufficient

to undermine confidence in the result." (Citations omitted; internal quotation marks omitted.) *Greene* v. *Commissioner of Correction*, 123 Conn. App. 121, 127–28, 2 A.3d 29, cert. denied, 298 Conn. 929, 5 A.3d 489 (2010), cert. denied sub nom. *Greene* v. *Arnone*, 563 U.S. 1009, 131 S. Ct. 2925, 179 L. Ed. 2d 1248 (2011).

"Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled. In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *Myers* v. *Commissioner of Correction*, 128 Conn. App. 564, 569, 17 A.3d 539, cert. denied, 301 Conn. 925, 22 A.3d 1278 (2011).

The petitioner cannot prevail on his claim that the habeas court improperly rejected his claim that his trial counsel was ineffective. He argues that his trial counsel should have requested a limiting instruction, taken an exception to the trial court's failure to provide a limiting instruction regarding Jusino's prior consistent statements, i.e., that the petitioner had sold drugs to her on prior occasions, or otherwise preserved the issue for appeal. The petitioner asserts that the lack of a limiting instruction allowed the jury to use the statements as criminal propensity evidence; that is, the jury could have concluded that, because the petitioner had sold drugs to Jusino before, he was guilty of the charged offenses.

The habeas court concluded that the petitioner's present claim "fail[ed] primarily for lack of a showing of prejudice." It noted that other testimony revealed that Jusino had purchased drugs from the petitioner on prior

occasions, and, accordingly, the challenged prior statements were cumulative. Additionally, the court reasoned that the trial court instructed the jury that the state's evidence that the petitioner sold heroin to Jusino in the past was admitted solely to show the existence of intent and knowledge by the petitioner and that such evidence was not permitted to be considered for criminal propensity. Because absent clear evidence to the contrary, juries are presumed to follow courts' instructions; *State* v. *Nance*, 119 Conn. App. 392, 405, 987 A.2d 376, cert. denied, 295 Conn. 924, 991 A.2d 569 (2010); the court concluded that the petitioner failed to show prejudice.

We agree with the court's reasoning. The petitioner has not demonstrated that his trial counsel's failure to request a limiting instruction regarding Jusino's prior consistent statements logically undermines confidence in the integrity of the result of the trial. The evidence was cumulative of other testimony and involved statements Jusino made to Chute, the thrust of which was already in evidence through other testimony. Additionally, the testimony was subject to the more general limiting instruction on prior misconduct. Likewise, for these reasons, the petitioner has not shown that his trial counsel's failure to preserve the issue for appeal caused prejudice; that is, the petitioner has not demonstrated that even if the issue was preserved for appeal, there would have been a reasonable probability of success.

II

The petitioner next claims that the court erred by rejecting his claim of ineffective assistance of his appellate counsel. He contends that counsel was ineffective by failing to raise the unpreserved claim regarding the omission of a limiting instruction as to Jusino's prior consistent statements and by failing to claim review of

that unpreserved claim pursuant to *State* v. *Golding*, supra, 213 Conn. 233, or the plain error doctrine. See Practice Book § 60-5. We disagree.

"The [performance prong] of the *Strickland*[2] analysis requires the petitioner to establish that appellate counsel's representation fell below an objective standard of reasonableness considering all of the circumstances. . . . [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . The right to counsel is not the right to perfect representation. . . . [Although] an appellate advocate must provide effective assistance, he is not under an obligation to raise every conceivable issue. A brief that raises every colorable issue runs the risk of burying good arguments . . . in a verbal mound made up of strong and weak contentions. . . . Indeed, [e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues. . . . Most cases present only one, two, or three significant questions. . . . The effect of adding weak arguments will be to dilute the force of the stronger ones. . . . Finally, [i]f the issues not raised by his appellate counsel lack merit, [the petitioner] cannot sustain even the first part of this dual burden since the failure to pursue unmeritorious claims cannot be considered conduct falling below the level of reasonably competent representation." (Internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, 131 Conn. App. 805, 808–809, 29 A.3d 166 (2011).

_____

[2] See *Strickland* v. *Washington*, supra, 466 U.S. 687.

As stated in part I of this opinion, our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is clearly erroneous as to the facts found and plenary as to the legal conclusion reached, to wit, whether the petitioner suffered a violation of his constitutional rights. *Myers* v. *Commissioner of Correction*, supra, 128 Conn. App. 569.

The petitioner's appellate counsel testified at the habeas trial that he did not believe that the claim that the trial court did not give a limiting instruction regarding Jusino's prior consistent statements to Chute was viable. The habeas court found that the petitioner's appellate counsel chose to present only those claims that he believed were strongest. This finding is not clearly erroneous, and as the court noted, we "will not, with the benefit of hindsight, second guess the tactical decisions of appellate counsel." (Internal quotation marks omitted.) *Farnum* v. *Commissioner of Correction*, 118 Conn. App. 670, 679, 984 A.2d 1126 (2009), cert. denied, 295 Conn. 905, 989 A.2d 119 (2010).

As we discussed in part I of this opinion, we do not conclude that the petitioner's limiting instruction claim had a reasonable probability of prevailing on appeal. Accordingly, because the claim lacked merit, the petitioner cannot meet his burden of showing that his appellate counsel's conduct fell below the level of reasonably competent representation. Likewise, review pursuant to *State* v. *Golding*, supra, 213 Conn. 233, or the plain error doctrine likely would have been denied; if review were granted, it likely would not have succeeded on the merits for reasons previously stated. The petitioner cannot sustain such burdens, and, accordingly, we reject his claim.

### III

The petitioner finally claims that his due process rights pursuant to *Brady* v. *Maryland*, 373 U.S. 83, 83

S. Ct. 1194, 10 L. Ed. 2d 215 (1963), were violated when the prosecutor did not disclose to the petitioner's trial counsel that Jusino received a favorable sentence in exchange for her testimony during the petitioner's trial. We disagree.

"In [*Brady* v. *Maryland,* supra, 373 U.S. 83] . . . the United States Supreme Court held that the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. To establish a *Brady* violation, the [petitioner] must show that (1) the government suppressed evidence, (2) the suppressed evidence was favorable to the [petitioner], and (3) it was material [either to guilt or to punishment]." (Internal quotation marks omitted.) *Walker* v. *Commissioner of Correction,* 103 Conn. App. 485, 492, 930 A.2d 65, cert. denied, 284 Conn. 940, 937 A.2d 698 (2007). A claim premised on a *Brady* violation in the context of an alleged undisclosed agreement or understanding between a cooperating witness and the state presents a mixed question of law and fact. The questions of fact are subject to review under the clearly erroneous standard, and the court's conclusion that the petitioner was not deprived of his due process rights is subject to plenary review. See *Elsey* v. *Commissioner of Correction,* 126 Conn. App. 144, 154, 10 A.3d 578, cert. denied, 300 Conn. 922, 14 A.3d 1007 (2011). "The prerequisite of any claim under the *Brady, Napue* [v. *Illinois,* 360 U.S. 264, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959)] and *Giglio* [v. *United States,* 405 U.S. 150, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972)] line of cases is the existence of an undisclosed agreement or understanding between the cooperating witness and the state." *State* v. *Ouellette,* 295 Conn. 173, 186, 989 A.2d 1048 (2010).

The petitioner's claim fails because the court found that the petitioner had failed to "[offer] any credible

evidence of an undisclosed agreement or understanding between Jusino and the state." The petitioner's assertion that Jusino received favorable treatment in exchange for her testimony in his case was surmise; even the facts on which the surmise is based are speculative. In fact, the court found: "[The prosecutor's] offer to speak to a judge on Jusino's behalf, Jusino's receipt of money from Chute following the seizure of the drugs from the petitioner's car and Jusino's criminal record had all been disclosed to [the petitioner's trial counsel] prior to Jusino's testimony at the petitioner's criminal trial." Accordingly, we readily conclude that the court's finding is not clearly erroneous and that the court did not improperly conclude that the petitioner's due process rights were not violated.

The judgment is affirmed.

In this opinion the other judges concurred.